# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                 No. CR 13-0325 JB

JESUS JOSE ORNELAS-YANEZ,

        Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Exception to Pre-Sentence Report filed on October 7, 2014 (Doc. 96)("Objections").  The Court held an evidentiary sentencing hearing on October 8, 2014.  The primary issues are: (i) whether a conditional discharge under New Mexico State law qualifies as a prior sentence under U.S.S.G. § 4A1.1(c); (ii) whether the Court should use a preponderance of the evidence standard in determining whether Defendant Jesus Jose Ornelas-Yanez is an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c); (iii) whether Ornelas-Yanez is an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c); and (iv) and whether there is sufficient evidence to conclude that Ornelas-Yanez engaged in multiple drug transactions.  Because a conditional discharge is a prior sentence if it is predicated on a finding of guilt, a conditional discharge can be a prior sentence under U.S.S.G. § 4A1.1(c).  Because the Court should use a preponderance of the evidence standard, Ornelas-Yanez is an organizer and a leader under U.S.S.G. § 3B1.1(c).  Because sufficient evidence was presented at the October 8, 2014, evidentiary hearing, the Court concludes that Ornelas-Yanez engaged in multiple drug transaction.  The Court will, thus, overrule Ornelas-Yanez' Objections and sentence him to 121-months imprisonment.

### FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, disclosed October 9, 2013 ("PSR"), that the United States Probation Office ("USPO") prepared.  In August, 2011, United States Drug Enforcement Administration ("DEA") agents initiated an investigation into a drug trafficking organization that was operating in Portales, New Mexico.  See PSR ¶ 10, at 4. As part of its investigation, the DEA obtained information about the drug trafficking organization from confidential sources.  See PSR ¶ 10, at 4.  On December 9, 2012, a person known as "El Chungo" contacted a confidential source ("CS") and informed the CS that he had five pounds of methamphetamine for sale.  PSR ¶ 11, at 4.  The DEA later learned that Ornelas-Yanez is El Chungo.  See PSR ¶ 12, at 4.  Ornelas-Yanez offered to provide the CS one pound of methamphetamine on consignment for $13,500.00.  See PSR ¶ 11, at 4.

On December 11, 2012, the CS contacted Ornelas-Yanez by telephone, and they agreed that the CS would send a courier to Portales, to pick up the pound of methamphetamine.  See PSR ¶ 11, at 4.  On December 12, 2012, an undercover DEA agent, acting as the CS' courier, arrived at Mark's Restaurant in Portales.  See PSR ¶ 13, at 4.  Once the DEA agent arrived, the CS notified Ornelas-Yanez that the courier was waiting at the restaurant to pick up the pound of methamphetamine.  See PSR ¶ 13, at 4.  Ornelas-Yanez arrived at the restaurant with Thomas Garcia.  See PSR ¶ 13, at 4.  After a short conversation, the agent asked Ornelas-Yanez if he had the pound of methamphetamine.  See PSR ¶ 14, at 4.  Ornelas-Yanez told the agent that he and Garcia would have to go pick up the drugs, and that the agent should eat some food at the restaurant while he and Garcia picked up the drugs.  See PSR ¶ 14, at 4.  Ornelas-Yanez told the agent that Garcia would bring the agent the drugs and that Ornelas-Yanez would call the CS to

give the CS instructions on where the agent should meet Garcia to receive the drugs.   See PSR ¶ 14, at 4.

Ornelas-Yanez called the CS and said that the DEA agent needed to wait in the Allsups Convenience Store parking lot in Portales.   See PSR ¶ 15, at 4.   The CS relayed this information to the agent, who then drove in his vehicle to the parking lot to wait for Garcia.   See PSR ¶ 15, at 4.   Garcia arrived at the parking lot, entered the agent's vehicle, and sat in the front passenger seat.   See id. ¶ 15, at 4.   The agent instructed Garcia to place the drugs in a bag that was on the floor board.   See PSR ¶ 15, at 4.   Garcia retrieved a plastic container from his groin area, placed it in the bag, and then left the vehicle.   See PSR ¶¶ 15-16, at 4.   On December 13, 2012, DEA agents inspected the plastic container, which was "filled with approximately 600 gross grams of a substance that field tested positive for methamphetamine."   PSR ¶ 16, at 4.   The DEA South Central Laboratory determined that 443.9 grams of the substance was actual methamphetamine and that it had a purity of 99.8 percent.   See PSR ¶ 5, at 4.

On December 18, 2012,[1]  Region V Task Force Officers[2]  began surveillance of Ornelas-Yanez' residence in Portales.   See PSR ¶ 16, 5.   A CS told the Task Force that Ornelas-Yanez called the CS to inform the CS that he was departing from Portales to deliver to the

---

[1]The PSR notes that the Task Force Officers established a surveillance of Ornelas-Yanez' residence and arrested Ornelas-Yanez on December 18, 2013.   See PSR ¶ 16, 5.  Because the Court's docket notes that Ornelas-Yanez was arrested on December 18, 2012, and because Ornelas-Yanez entered into a plea agreement on June 26, 2013, see Plea Agreement, filed June 26, 2013 (Doc. 55)("Plea Agreement"), the Court believes that the PSR intended to state that these events occurred on December 18, 2012.

[2]According to the Clovis, New Mexico, Police Chief, the Region V Task Force "is a collaborative law enforcement group drawn from Curry, Roosevelt, Quay and De Baca counties and includes the sheriff's office in those counties as well as police departments in Clovis, Portales, Tucumcari, Texico, Santa Rosa and Logan as well as seven villages that do not maintain full time police services . . . ."   Sharna Johnson, Interviews Set for Region V Drug Task Force Coordinator, Clovis News Journal (June 17, 2010), http://www.cnjonline.com/2010/06/17/interviews-set-for-region-v-drug-task-force-coordinator.

CS a pound of methamphetamines.   See PSR ¶ 16, at 5.   The Task Force observed a vehicle with two occupants leaving Ornelas-Yanez' residence.   See PSR ¶ 16, at 5.   The Task Force stopped the vehicle, and discovered Ornelas-Yanez and his wife inside it.   See PSR ¶ 16, at 5.   The Task Force searched the vehicle, but did not discover any methamphetamines.   See PSR ¶ 16, at 5. The Task Force determined that Ornelas-Yanez was in the United States without proper immigration documents and arrested him for illegal reentry.[3]   See PSR ¶ 16, at 5.

On January 14, 2013, an arrest warrant was issued for Garcia and Ornelas-Yanez, and on January 16, 2013, Garcia was arrested.   See PSR ¶ 17, at 5.   Garcia provided statements which said that he had been living rent-free with Ornelas-Yanez for about two years.   See PSR ¶ 17, at 6. He also admitted to delivering the plastic container of methamphetamine to the DEA agent on December 12, 2012.   See PSR ¶ 17, at 6.   Garcia stated that he did it "out of a sense of obligation."   PSR ¶ 17, at 6.   Garcia stated that he thought the plastic container contained marijuana and that it was not until after he delivered the container that he learned that it contained methamphetamine.   See PSR ¶ 17, at 6.   There is no information to indicate that Garcia received monetary compensation or that he had been involved in any prior drug activity.   See PSR ¶17, at 6.

### PROCEDURAL BACKGROUND

On June 26, 2013, Ornelas-Yanez pled guilty to possessing with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and to aiding and abetting, in violation of 18 U.S.C. § 2.

---

[3]It is unclear whether the Task Force arrested Ornelas-Yanez or if federal agents arrested him.   The PSR states that Ornelas-Yanez "was taken into federal custody for Illegal Reentry after he was determined to be in the United States without proper immigration documents."   PSR ¶ 16, at 5.   Because the Task Force initiated the traffic stop, see PSR ¶ 16, at 5, the Court assumes that the Task Force also arrested him.   Whether it was federal agents or the Task Force that arrested Ornelas-Yanez, however, is not relevant to this Memorandum Order and Opinion.

See Plea Agreement at 2; Clerk's Minutes for Proceedings Held Before the Honorable Alan B. Johnson, United States District Judge Sitting by Designation from the District of Wyoming, filed June 26, 2014 (Doc. 51).   The PSR recommends a Sentencing Guidelines range of 151 to 188 months.   See PSR ¶ 71, at 14.   Ornelas-Yanez makes three objections to the PSR's sentencing calculations.   See Objections at 1-4.

> **1.**     **The PSR's Calculation.**

With regards to sentencing, the PSR calculates a base offense level of 34, which corresponds to that for "an offense involving 443.9 net grams of actual methamphetamine" under U.S.S.G. § 2D1.1.   PSR ¶ 23, at 6.   The PSR recommends an additional 2 offense levels under U.S.S.G. § 3B1.1(c) for Ornelas-Yanez' role in the offense as "an organizer, leader, manager, or supervisor."   PSR ¶ 26, at 6.   The PSR also recommends a 2 offense level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and another 1 level reduction for assisting in the prosecution of his misconduct by "timely notifying the authorities of [his] intention to enter a plea of guilty" under U.S.S.G. § 3E1.1(b).   PSR ¶¶ 30-31, at 6.   The PSR recommends a total offense level of 33.   See PSR ¶ 32, at 6.

The PSR calculates that Ornelas-Yanez has a criminal history score of 2 and a resulting criminal history category of II.   See PSR ¶¶ 37-38, at 8.   This criminal history score results from two convictions.   See PSR ¶¶ 35-36, at 7-8.   The first conviction occurred in Portales, and was for possession of a controlled substance, and use or possession of drug paraphernalia.   See PSR ¶ 35, at 7.   Ornelas-Yanez received a conditional discharge without adjudication after the court "accepted and recorded a plea of guilty."   PSR ¶ 35, at 7.   See Order for Conditional Discharge and Probationary Supervision at 1, filed October 8, 2014 (Doc. 101)("Hearing Ex. 1")(noting that the state court "accepted and recorded a plea of guilty" on January 7, 2008).   Sentencing was

imposed on January 15, 2008, and Ornelas-Yanez received eighteen months of probation.   See PSR ¶ 35, at 7.   The PSR notes that, on April 7, 2009, probation was discharged satisfactorily.   See PSR ¶ 35, at 7.   The second conviction occurred in Toledo, Ohio, for trafficking in marijuana.   See PSR ¶ 36, at 7.   Ornelas-Yanez was sentenced to three years of probation on March 22, 2012, and probation was terminated on April 18, 2012, because Ornelas-Yanez paid all "fines/costs."   PSR ¶ 36, at 7.

The PSR notes that the minimum term of imprisonment for violations of 21 U.S.C. § 841(a)(1) and 28 U.S.C. § 841(b)(1)(A) is ten years and the maximum term is life.   See PSR ¶ 70, at 14.   The PSR recommends, for an offense level of 33 and a criminal history category of II, an imprisonment range between 151 and 188 months.   See PSR ¶ 71, at 14.

### 2. Ornelas-Yanez' Objections.

On December 30, 2013, Ornelas-Yanez filed the Defendant's Exception to Pre-Sentence Report and Request for Evidentiary Hearing, filed December 30, 2013 (Doc. 74)("First Objections").   On May 5, 2014, Ornelas-Yanez withdrew the First Objections.   See Defendant's Notice to Withdraw Defendant's Exception to Pre-Sentence Report and Vacate Evidentiary Hearing, filed May 5, 2014 (Doc. 84)("Notice to Withdraw").   Ornelas-Yanez stated: "Due to the ongoing negotiations with the United States, Defendant filed his exceptions prematurely and is hereby withdrawing the Defendant's Exceptions (Doc. 74) until the negotiations have been completed."   Notice to Withdraw at 1.   On October 7, 2014 -- the day before Ornelas-Yanez' sentencing -- Ornelas-Yanez filed the Objections.   See Objections at 1.   Other than some slight spacing and formatting differences, the Objections appear to be identical to the First Objections. Compare First Objections at 1-8, with Objections at 1-7.

Ornelas-Yanez requests an evidentiary hearing and makes three objections to the PSR's sentencing calculation.  <u>See</u> Objections at 1-4.  Ornelas-Yanez' first objection is to the criminal history point "for the alleged conviction in Portales, New Mexico."  Objections at 1. Ornelas-Yanez relies on <u>United States v. Alvarado</u>, 458 F. Supp. 2d 1266 (D.N.M. 2006)(Black, J.), to support this objection.  <u>See</u> Objections at 1-2.  There, Ornelas-Yanez contends, the defendant pled guilty but was granted a conditional discharge.  <u>See</u> Objections at 1-2.  Ornelas-Yanez quotes a portion of the Guidelines, which states that "'prior sentence' means any sentence previously imposed upon adjudication of guilt," and argues that, in <u>United States v. Alvarado</u>, the Honorable Bruce D. Black, United States District Judge for the District of New Mexico,[4] concluded that, under the New Mexico conditional discharge statute, there is "no adjudication of guilt, regardless if there is a guilty plea."  Objections at 2.  Ornelas-Yanez contends that he received a conditional discharge, and, thus, according to <u>United States v. Alvarado</u>, the discharge should not count against his criminal history.  <u>See</u> Objections at 2.

Ornelas-Yanez' second objection is "to the enhancement pursuant to U.S.S.G. § 3B1.1(c)." Objections at 2.  Ornelas-Yanez states:

> The Defendant would indicate that the 10th Circuit has pointed out that there must first be an analysis [sic] §3E1.1(a)[5] and (b) and distinguish the nature of the Defendants [sic] role under those provisions before and without mixing of analysis with subsection (c).  The problem with the suggested enhancement, assuming that

---

[4] Ornelas-Yanez repeatedly refers to <u>United States v. Alvarado</u> as a Tenth Circuit case. <u>See</u> Objections at 1-2.  <u>United States v. Alvarado</u> is a district court opinion that Judge Black wrote.  <u>See</u> <u>United States v. Alvarado</u>, 458 F. Supp. 2d at 1266.  Accordingly, the Court will refer to <u>United States Alvarado</u> as a district court case and refer to the opinion as Judge Black's ruling, rather than the Tenth Circuit's holding.

[5] Ornelas-Yanez likely means U.S.S.G. § 3B1.1, which deals with aggravating roles and a sentencing increase for being a "leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c).  U.S.S.G. § 3E1.1 deals with a reduction in sentencing for an acceptance of responsibility.  <u>See</u> U.S.S.G. § 3E1.1.  When Ornelas-Yanez refers to § 3E1.1, but it is clear that he meant § 3B1.1, the Court will state § 3B1.1.

there is no basis for a or b, is that the individual involved in the crime with Mr. Ornelas-Yanez had never been involved in any kind of drug dealing relationship with Defendant, Jesus Ornelas-Yanez.  Mr. [Garcia[6]] indicated to the Government that his only role in the offense developed on that day when after the meeting at the restaurant, Mr. Ornelas-Yanez asked him to deliver the package to the [DEA agent].   Mr. [Garcia] had never delivered drugs for Mr. Ornelas-Yanez, was not involved in any kind of drug smuggling or drug dealing relationship with Mr. Ornelas-Yanez.   All he did was work with Mr. Ornelas-Yanez taking care of horses.   He was not supervised or directed in any fashion in the past by Mr. Ornelas-Yanez regarding any former drug transactions.   Mr. [Garcia] actually did this as a favor to Mr. Ornelas-Yanez.   Mr. [Garcia] didn't even know what kind of drugs were being delivered and was not to be paid or share in any of the drug proceeds.   These were two individuals [sic] one of which asked the other to do him a favor.

Objections at 2-3.   Ornelas-Yanez argues that the commentary to § 3B1.1 states: "'This adjustment does not apply to a defendant who merely suggests committing the offense.'" Objections at 3 (quoting U.S.S.G. § 3B1.1 Application Note 4).

Ornelas-Yanez cites United States v. Backas, 901 F.2d 1528 (10th Cir. 1990), to argue that the United State Court of Appeals for the Tenth Circuit affirmed the district court's finding, by a preponderance of the evidence, that the defendant was a supervisor when the defendant regularly sold drugs from his house and paid a doorman to screen customers before they entered the house. See Objections at 3.   Ornelas-Yanez contends that the defendant in that case had the power to direct and supervise the doorman.   See Objections at 3.   Ornelas-Yanez asserts: "Counsel has researched the issue and has found no case in which a 'friend' or 'associate' doing another a favor has been found to be under the supervision of the other."   Objections at 3.   He also cites to United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995), to argue that the Court must make specific findings that he was a supervisor or organizer, and that the Court cannot make generalized conclusions.   See Objections at 3.   Ornelas-Yanez contends that the PSR is conclusory and that

---

[6]Ornelas-Yanez repeatedly refers to Garcia as "Mr. Torres."   Objections at 2-3.   It is not clear whether Torres is an alias for Garcia or whether the name Torres in the Objections is merely a clerical error.   For clarity, the Court will refer to Garcia as Garcia.

the Court "can look at the findings it made in sentencing[7] that defendant to [sic] understand that he was not only [sic] minimal participant but that it was an almost unwitting act an [sic] act that it was suggested in which he participate."   Objections at 3.

Ornelas-Yanez cites to United States v. Booker, 543 U.S. 220 (2005), Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 133 S. Ct. 2151 (2013), to argue that the Court must determine that the U.S.S.G. § 3B1.1 enhancement applies by a preponderance of the evidence "or something more compelling."   Objections at 3.   Ornelas-Yanez contends that, because the enhancements increase the mandatory minimum, they should be "subject to more substantial proof."   Objections at 3.   He asserts that the Court should hold an evidentiary hearing to determine if the United States can meet its burden of proof, because, if the Court were to find in his favor on his first objection, he would be subject to the "safety valve" application, U.S.S.G. § 5C1.2, and his sentencing range would decrease from 151 to 188 months to 70 to 87 months, see Objections at 3-4.   Ornelas-Yanez cites United States v. Alvarado to argue that, under the rule of lenity, the Court should decide factual disputes in his favor.   See Objections at 4.

Ornelas-Yanez' third objection, in its entirety, states: "The third objection of the Defendant relates to the alleged Offense Conduct that seeks to accuse the defendant of multiple transaction [sic] of methamphetamine which the Defendant has consistently denied."   Objections at 4.

Ornelas-Yanez next discusses the PSR's recommended range, his acceptance of responsibility, and that he disputes his role in the offense.   See Objections at 4.   He notes that he does not qualify for a variance or a downward departure below the mandatory minimum.   See Objections at 5.   Ornelas-Yanez argues that, if the Court overrules his objections, he would seek a

---

[7]Ornelas-Yanez filed the Objections before the Court sentenced him, so it is unclear to which sentencing he is referring.

variance.[8]  <u>See</u> Objections at 5.  Ornelas-Yanez lists the factors from 18 U.S.C. § 3553(a) and

contends that the Court does not need to go through each individual factor.  <u>See</u> Objections at 6.

Ornelas-Yanez also contends that Sentencing Guidelines do not bind the Court, but that it should

still consider the Guidelines.  <u>See</u> Objections at 6.  He contends that he is "the type of individual

that due to his drug addiction has come to live within and around a style of life that is conducive to

drug dealing."  Objections at 7.  He maintains that in "this particular instance he was approached

for a drug deal and was accommodating in doing so."  Objections at 7.  Ornelas-Yanez argues

that he is "not the principal," but that he is merely "an intermediary."  Objections at 7.  He argues

that the Court should sustain his objections and sentence him to 70 months, but that, if the Court

overrules his objections, the Court should sentence him to the mandatory minimum of 120 months.

<u>See</u> Objections at 7.

> **3.**      **<u>The Addendum to the PSR</u>.**

On May 13, 2014, the USPO disclosed an addendum to the PSR.  <u>See</u> Addendum to the

Presence Report (disclosed May 13, 2014)("Addendum").   The USPO disclosed the

Addendum after Ornelas-Yanez withdrew his First Objections, but before he filed his later

Objections.  <u>See</u> Notice to Withdraw at 1 (withdrawing First Objections on May 5, 2014);

---

[8]Ornelas-Yanez argues:

> The defendant is not qualified for a variance or downward departure given the
> mandatory nature of the sentence.   However, given the arguments of the
> Defendant regarding the guidelines he would indicate that he will not be seeking a
> downward [departure] to the extent the court was to adopt the defendant's position.
> If the court does not it would be the position of the defendant that the role and
> criminal history of the defendant is overrepresented and the court should sentence
> the defendant to the mandatory minimum required herein.

Objections at 5.  The mandatory minimum for a violation of 18 U.S.C. § 841(a) is 10 years.  <u>See</u>
18 U.S.C. § 841(b).  According to the PSR, Ornelas-Yanez' Guidelines imprisonment range is
151 to 188 months.  <u>See</u> PSR ¶ 71, at 14.  To sentence Ornelas-Yanez to the mandatory minimum
of 120 months, the Court would have to vary from the Guidelines range.  Ornelas-Yanez is, thus,
requesting a variance, but not a variance that is below the mandatory minimum.

Objections at 1 (Objections filed on October 7, 2014).   The USPO notes that neither the United States nor Ornelas-Yanez objected to the PSR, because Ornelas-Yanez had withdrawn his First Objections.   See Addendum at 1.   The USPO notes that the United States Sentencing Commission has voted to pass an amendment that would lower the base offense level of U.S.S.G. § 2D1.1 from 34 to 32.   See Addendum at 1.   The USPO states that, if the Court uses the proposed amendments to § 2D1.1, Ornelas-Yanez' total offense level would become 31, which would result in a Guideline imprisonment range of 121 to 151 months.   See Addendum at 1.

On October 8, 2014, the USPO disclosed a Second Addendum to the PSR in response to Ornelas-Yanez' Objections.   See Second Addendum to the Presentence Report (disclosed October 8, 2014)("2d Addendum").   The USPO responds to Ornelas-Yanez' first objection concerning his criminal history, by quoting U.S.S.G. §§ 4A1.2(a)(1), 4A1.2(a)(4), and 4A1.2(f). Addendum at 1.   These sections state:

**(a)   Prior Sentence**

**(1)**   The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.

. . . .

**(4)**   . . . .

"Convicted of an offense," for the purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

. . . .

**(f)   Diversionary Dispositions**

Diversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted.   A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is

not formally entered, except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2.  The USPO contends that, in the disputed conviction, Ornelas-Yanez pled guilty before the court entered an order granting him a conditional discharge.  See 2d Addendum at 2.  The USPO argues that United States v. Alvarado involved the issue whether a prior conditional discharge could be used for an enhancement pursuant to 21 U.S.C. § 841(a)(1)(A) and 21 U.S.C. § 851.  See 2d Addendum at 2.  The USPO contends that the standards for a statutory enhancement under 21 U.S.C. § 851 are different than the standards under U.S.S.G. § 4A1.2.  See 2d Addendum at 2.

The USPO responds to Ornelas-Yanez' second objection by arguing that Ornelas-Yanez directed Garcia.  See 2d Addendum at 2.  It contends that Ornelas-Yanez arranged the drug transaction and dispatched Garcia to act as a courier.  See 2d Addendum at 2.  The USPO, thus, maintains that Ornelas-Yanez is an organizer, leader, manager, or supervisor.  See 2d Addendum at 2.  The USPO addresses Ornelas-Yanez' last objection by arguing that "[d]iscovery materials reflect multiple confidential sources began identifying the defendant as a distributor of narcotics in October 2011."  2d Addendum at 2.

### 4.    October 8, 2014, Hearing.

The Court held an evidentiary hearing on October 8, 2014.  See Transcript of Evidentiary Hearing (taken October 8, 2014)("Tr.").[9]  At the hearing, the United States moved to strike Ornelas-Yanez' Objections by arguing that Ornelas-Yanez untimely filed them.  See Tr. at 2:25-3:7 (Wang, Court).  The United States noted, however, that it was prepared to proceed in arguing the objections.  See Tr. at 3:3-7 (Wang, Court); id. at 5:2-10.  Ornelas-Yanez argued that the Objections were the same as those he originally filed on December 30, 2012, but later

_____

[9]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

withdrew.  See Tr. at 3:17-20 (Juarez).  He contended that he had discussions with the United States regarding a safety-valve application and about a possible departure under U.S.S.G. § 5K1.1 for assisting the United States.  See Tr. at 3:20-24 (Juarez).  Ornelas-Yanez argued that, after providing the United States with information, the United States decided that he could no longer provide any valuable information.  See Tr. at 3:24-4:4 (Juarez).  He argued that, at that point, he decided to go forward with sentencing.  See Tr. at 4:4-6 (Juarez).  Ornelas-Yanez contended that he intended to re-file his First Objections and that he "filed some kind of motion to indicate to the Court that" he had renewed his objections.[10]  See Tr. at 4:7-10.  He asserted that, as soon as he realized that he had not re-filed the Objections, he re-filed them.  See Tr. at 4:10-12 (Juarez). Ornelas-Yanez argued that, because he had previously filed the same Objections, the United States is not prejudiced by the late filing.  See Tr. at 4:12-18 (Juarez).  He stated that, if the United States wants, he would not object to the Court giving the United States time to brief the issues raised in the Objections.  See Tr. at 4:19-24 (Juarez).  Because the United States noted that it was prepared to argue the Objections, the Court allowed the parties to argue them, but the Court stated that, if either party became prejudiced during the hearing, it may change its mind.  See Tr. at 6:4-8 (Court).

    At the hearing, the United States called the undercover DEA Agent[11] as a witness.  See Tr. at 17:20-4 (Wang).  The Agent testified that, in October, 2012, Ornelas-Yanez contacted a CS

---

[10]It is unclear to what motion Ornelas-Yanez is referring.  He may be referring to the Defendant Jesus Ornelas-Yanez's Emergency Out of Time Sealed Unopposed Motion to Continue Sentencing Hearing Set To For August 7, 2014, filed August 6, 2014 (Doc. 92)("Motion to Continue").  There, to support the Motion to Continue, Ornelas-Yanez argues that he had withdrawn his "Sentencing Memorandum," and that "[t]he Sentencing memorandum has not yet been refiled and it is the understanding that the Court does not have a sentencing memorandum by the defendant or a response by the Assistant US Attorney, Lynn Wang."  Motion to Continue at 1.

[11]To protect the DEA agent's identity, the Court will refer to the agent as "Agent" rather than by the agent's name.

and informed the CS that he was expecting a delivery of cocaine and marijuana.  See Tr. at 19:18-23 (Agent).   The Agent testified that, in November, 2012, Ornelas-Yanez contacted the CS and told the CS to start recruiting couriers and transporters who could transport cocaine and marijuana from El Paso, Texas, to Rosa, New Mexico.[12]   See Tr. at 19:23-20:4   (Agent).   The Agent further testified that Ornelas-Yanez assured the CS that the drug deliveries were "a sure thing," because the source of the drugs in Mexico was Ornelas-Yanez' father.   See Tr. at 20:4-8 (Agent).    The Agent testified that, on December 8, 2012, Ornelas-Yanez contacted the CS and told the CS to expect a delivery of five pounds of methamphetamine.   See Tr. at 20:9-13 (Agent). The Agent testified that, on December 9, 2012, Ornelas-Yanez called the CS and told the CS that he received the methamphetamine shipment, and offered to reserve one to two pounds of the methamphetamine for the CS to be paid on consignment.   See Tr. at 20:22-21:6 (Agent).   On consignment, according to the Agent, means that there is no exchange of money when the drugs are received, so that the drugs can be sold and then the sales' proceeds can be used to pay for the drugs.   See Tr. at 21:7-12 (Wang, Agent).

The Agent testified that, on December 11, 2012, Ornelas-Yanez called the CS, and they agreed that the CS would take the drugs from Ornelas-Yanez and that the CS would send a courier to pick up the drugs.   See Tr. at 22:4-13 (Agent).   According to the Agent, the agent acted as the CS' courier.   See Tr. at 22:14-15 (Wang, Agent).   The Agent testified that, on December 12, 2014, the Agent arrived in Portales and met with Ornelas-Yanez, whom Garcia accompanied. See Tr. at 22:18-21 (Agent).   The Agent testified that Ornelas-Yanez began to interrogate the Agent concerning the route that the Agent took to arrive in Portales; the people to whom the Agent

---

[12]The Agent likely meant Santa Rosa, New Mexico.  Santa Rosa is the county seat of Guadalupe County, New Mexico, and lies between Albuquerque, New Mexico, and Tucumcari, New Mexico.   See Santa Rosa, New Mexico, Wikipedia.org, http://en.wikipedia.org/wiki/Santa_Rosa,_New_Mexico (last visited Dec. 8, 2014).

talked in the parking lot; whether the Agent knew certain people; and whether certain people knew the Agent.  See Tr. at 22:18-23:1 (Agent).   After the questioning, according to the Agent, Ornelas-Yanez told the Agent that he would bring the Agent one pound of methamphetamine. See Tr. at 23:1-8 (Wang, Agent).   The Agent testified that Ornelas-Yanez told the Agent that he would not bring the Agent the drugs, but that Garcia would, and that the CS would contact the Agent with instructions on where to meet Garcia.   See Tr. at 23:9-22 (Wang, Agent).   According to the Agent, the Agent met with Garcia as Ornelas-Yanez directed, and Ornelas-Yanez did not show up when the methamphetamine was delivered.   See Tr. at 23:23-24:4 (Wang, Agent).   The Agent testified that this transaction was a one-time transaction with Ornelas-Yanez, but that Ornelas-Yanez had stated that he had tried to sell other forms of controlled substances to the CS in October, 2012, and November, 2012.   See Tr. at 24:9-19 (Wang, Agent).

The Agent testified that the CS had expressed to Ornelas-Yanez that the CS was interested in purchasing drugs from Ornelas-Yanez.   See Tr. at 25:19-26:23 (Wang, Juarez, Court, Agent). According to the Agent, the CS expressed to Ornelas-Yanez that the CS wanted to purchase some methamphetamine after the idea of purchasing methamphetamine was "brought up and offered to the" CS.   Tr. at 26:24-27:14 (Wang, Juarez. Court, Agent).   The Agent also testified that the Agent acted as the CS' courier and not as Ornelas-Yanez' courier.   See Tr. at 27:22-28:6 (Juarez, Agent).   The Agent testified that, before meeting Garcia in Portales, the Agent did not know whom Garcia was.   See Tr. at 28:18-10 (Wang, Juarez, Agent, Court).   The Agent also testified that Garcia told the Agent that the December 12, 2012, transaction was the first time that he had delivered drugs for Ornelas-Yanez.   See Tr. at 29:7-30:7 (Juarez, Court, Agent).   According to the Agent, Garcia helped Ornelas-Yanez with Ornelas-Yanez' horses.   See Tr. at 29:15-30:4 (Juarez, Agent, Court).   The Agent testified that Garcia told the Agent that he was

Ornelas-Yanez' delivery planner and transporter.[13]   See Tr. at 30:22-24 (Agent).   According to

the Agent, several recorded telephone calls that were made from jail[14] used the word "caballo"[15]

or some other word referring to a farm animal.   Tr. at 31:14-22 (Wang, Agent).   The Agent

testified that, through his training and experience, the word caballo was being used to reference

methamphetamine.   See Tr. at 31:23-32:4 (Wang, Agent).   The Agent also testified that, while

Ornelas-Yanez and Garcia were in custody and kept in the same jail cell, Ornelas-Yanez

"coached" Garcia about what Garcia should say.   Tr. at 32:5-12 (Wang, Agent).   The Agent

testified that he is not aware whether Ornelas-Yanez owns horses, but testified that Ornelas-Yanez

does not have a license with the New Mexico Game Association and does not have a race horse

license with the New Mexico Racing Commission.   See Tr. at 33:10-13 (Agent).

Ornelas-Yanez also testified at the hearing.   See Tr. at 34:17-22 (Juarez, Court).

Ornelas-Yanez testified that he met with the United States and provided information about his

drug dealing.   See Tr. at 35:12-18 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that he told

the United States about the people with whom he had dealt drugs.   See Tr. at 35:23-25 (Juarez,

---

[13]According to the transcript from the hearing, the following transaction took place:

> Q.   So my question to you on redirect is this: With your investigation on this case including Mr. Ornelas and Mr. Garcia what did you discover was the role for Mr. Garcia?

> A.   Yes, during the the [sic] Mr. Garcia stated that he was are [sic] the delivery plan the transporter for Mr. Ornelas.

Tr. at 30:18-24 (Wang, Agent).   The transcript is not entirely clear, but the Court believes that the Agent stated that Garcia was Ornelas-Yanez' delivery planner and transporter.

[14]It is not clear whether these telephone calls were made by Ornelas-Yanez, Garcia, or someone else.

[15]"Caballo" is the Spanish word for a male horse.   Caballo, Wikipedia.org, http://en.wikipedia.org/wiki/Caballo (last visited Dec. 5, 2014).

Ornelas-Yanez); id. at 36:15-17 (Juarez, Ornelas-Yanez).   He testified that he gave the United States information about the charged offense and about other activities in which he was involved. See Tr. at 40:21-24 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that the CS had insisted that Ornelas-Yanez get drugs for the CS.[16]   See Tr. at 37:1-5 (Juarez, Ornelas-Yanez). Ornelas-Yanez testified that the CS wanted marijuana and cocaine, but some people sent him "ice"[17] instead.   Tr. at 37:8-14 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that the CS agreed to accept the ice.   See Tr. at 37:13-14 (Juarez, Ornelas-Yanez).   The drugs were to be delivered to Ornelas-Yanez at the Wal-Mart in Portales.   See Tr. at 37:17-19 (Ornelas-Yanez). Ornelas-Yanez testified that he called the CS and told the CS that the drugs were in Portales and that he was going to send someone to take the drugs to the CS.   See Tr. at 38:18-22 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that, instead of taking the drugs to the CS, he met with the Agent to deliver the Agent the drugs.   See Tr. at 38:23-6 (Juarez, Ornelas-Yanez). Ornelas-Yanez testified that, after meeting with the DEA Agent, he called the person who had the drugs and told the person that he needed the drugs to be delivered.   See Tr. at 39:7-10 (Juarez, Ornelas-Yanez).   According to Ornelas-Yanez, Garcia eventually delivered the drugs to the DEA Agent.   See Tr. at 39:11-13 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that he was to receive $1,500.00 for the pound of methamphetamine, see Tr. at 37:21-22 (Ornelas-Yanez), and that he was going to give $500.00 to Garcia and keep $1,000.00 for himself, see Tr. at 39:15-17 (Ornelas-Yanez).

---

[16]Ornelas-Yanez does not say that the CS was a CS, but instead refers to a person by name. Based on the context, the Court infers that the person whom Ornelas-Yanez is referring is the CS. To protect the CS' identity, the Court will refer to the CS as "CS" and not by the name Ornelas-Yanez used during the hearing.

[17]"Ice" is a slang term for methamphetamine.   Methamphetamine, Wikipedia.org, http://en.wikipedia.org/wiki/Methamphetamine (last visited Dec. 5, 2014).

Ornelas-Yanez testified that Garcia had been living with him for over a year.   See Tr. at 35:5-7 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that Garcia fed his horses and that he had never worked with Garcia on a drug deal before this transaction.   See Tr. at 39:18-24 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that he told Garcia to do him a favor and deliver the methamphetamine for him.   See Tr. at 44:15-45:2 (Wang, Ornelas-Yanez).   Ornelas-Yanez testified that Garcia would not have delivered the drugs if Ornelas-Yanez had not asked him to deliver them and that he told Garcia that he was delivering marijuana rather than methamphetamine.   See Tr. at 45:3-46:1 (Wang, Ornelas-Yanez); id. at 46:13-17 (Wang, Ornelas-Yanez).

Ornelas-Yanez testified that he met the CS at a horse race and that the CS knew that he owned horses.   See Tr. at 39:25-40:9 (Juarez, Ornelas-Yanez).   He also testified that he is a United States citizen and is in the process of trying to establish his citizenship.   See Tr. at 41:2-8 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that he is aware that the DEA seized approximately 600 grams of a controlled substance that tested positive for methamphetamine and that the substance was 99.8% pure.   See Tr. at 41:21-43:6 (Wang, Juarez, Ornelas-Yanez, Court). He later testified, however, that he does not know what the purity of the methamphetamine was, because he only made the arrangements for the transaction and never saw the drugs.   See Tr. at 43:17-20 (Ornelas-Yanez).   Ornelas-Yanez also testified that he made the arrangements for the methamphetamine sale, because the CS wanted the drugs.   See Tr. at 44:5-8 (Wang, Ornelas-Yanez).

Concerning the first objection, Ornelas-Yanez argued that, because he had been granted a conditional discharge, the January 15, 2008, conviction should not count against him.   See Tr. at

7:11-16 (Juarez).   He argued that Judge Black's[18] case of United States v. Alvarado is indistinguishable from this case, because, there, the defendant pled guilty and was granted a conditional discharge, but the discharge was not counted against the defendant because there was no adjudication of guilt.   See Tr. at 7:11-20 (Juarez).   Ornelas-Yanez contended that, because he received a satisfactory discharge for that conviction, the conviction should not count as a criminal history point, because there was no adjudication of guilt.   See Tr. at 8:1-5 (Juarez); id. at 11:11-19 (Juarez).

To his second objection, Ornelas-Yanez argued that the basis for the USPO's organizer, leader, manager, or supervisor enhancement is that Garcia, who was a friend that lived with Ornelas-Yanez, did Ornelas-Yanez a favor by delivering the drugs to the DEA Agent.   See Tr. at 15:17-24 (Juarez).   Ornelas-Yanez contended that he does not have a history of "leading, directing or supervising" Garcia.   Tr. at 15:24-16:2 (Juarez).   Ornelas-Yanez asserted that this enhancement requires a supervisory relationship and not just a one-time favor.   See Tr. at 16:2-9 (Juarez).   He asserted that the Tenth Circuit case he cited in his brief -- United States v. Backas -- shows that the Tenth Circuit requires an ongoing relationship in which a defendant has another person under his or her supervision and control.   See Tr. at 16:9-19 (Juarez).   Ornelas-Yanez maintained that a one-time isolated event cannot lead to a leader, supervisor, or organizer enhancement, which, he argued, happened in this case.   See Tr. at 16:19-17:3 (Juarez).

Ornelas-Yanez further argued that the enhancement is intended to apply to people who set up drug-selling rings and direct others to sell drugs on their behalf.   See Tr. at 50:4-13 (Juarez).   Ornelas-Yanez argued that he had no former supervisory relationship with Garcia, but instead he simply asked Garcia to deliver the drugs for him.   See Tr. at 50:22-51:2 (Juarez).   Ornelas-Yanez

_____

[18]Ornelas-Yanez again refers to United States v. Alvarado as a Tenth Circuit case.   See Tr. at 7:11-18 (Juarez).   The Court, however, will refer to the case as Judge Black's -- a district court judge -- for clarity.

further contended that the United States has failed to factually prove that he was a leader or organizer.  See Tr. at 51:13-18 (Juarez).   Ornelas-Yanez did not address his third objection at the hearing.  See Tr. at 57:9-11 (Juarez, Court).

The United States responded to Ornelas-Yanez' first objection by arguing that the PSR states that the state court, which convicted Ornelas-Yanez on January 15, 2008, accepted Ornelas-Yanez' guilty plea.  See Tr. at 8:10-16 (Wang).   The United States noted that it supports the USPO's response to Ornelas-Yanez' objection in the 2d Addendum.  See Tr. at 8:17-20 (Wang).   The United States contended that a conditional discharge is not considered a prior conviction for the purpose of restoring Ornelas-Yanez' rights, such as the right to vote and own firearms.  See Tr. at 8:20-24 (Wang).   The United States argued, however, that, because Ornelas-Yanez is not a United States citizen, this case is different, because the rights that are normally restored through a conditional discharge do not apply.  See Tr. at 8:25-9:3 (Wang). The United States argued that, for criminal history purposes, a prior conviction requires guilt to be established through a guilty plea, a trial, or a plea of no contest.  See Tr. at 9:4-9 (Wang).   It maintained that, because the USPO examined the documents from the prior case and found that Ornelas-Yanez pled guilty, the PSR is correct in adding an additional criminal history point.  See Tr. at 9:10-18 (Wang).   At that time, the USPO provided the Court, the United States, and Ornelas-Yanez with copies of the court documents from the January, 15, 2008, case, which state that Ornelas-Yanez plead guilty and received a conditional discharge under N.M. Stat. Ann. § 31-20-13.  See Hearing Ex. 1 at 1-2.

Addressing Ornelas-Yanez' second objection, the United States argued that Ornelas-Yanez arranged the drug transaction and dispatched Garcia to act a courier.  See Tr. at 17:18-20 (Wang). The United States contended that, for the enhancement to apply, Ornelas-Yanez had to organize,

lead, manage, or supervise one or more persons, and, in this case, Garcia was that other person. See Tr. at 51:25-6 (Wang).   The United States argued that Ornelas-Yanez ordered Garcia to deliver the drugs.   See Tr. at 52:5-12 (Wang).   It also contended that higher organizers in a drug ring will set up drug deals and then not show up to protect themselves, which is what Ornelas-Yanez did.   See Tr. at 52:20-23 (Wang).

To Ornelas-Yanez' final objection, the United States argued that the DEA Agent's testimony established that Ornelas-Yanez received a five-pound shipment of methamphetamine, but that Ornelas-Yanez gave only one to two pounds to the Agent, which left three to four pounds of methamphetamine to be distributed.   See Tr. at 56:7-14 (Wang).   The United States asserts that it believes that the remaining three to four pounds of methamphetamine were to be sold to other people.   See Tr. at 56:16-19 (Wang).

The Court overruled Ornelas-Yanez' first objection.   See Tr. at 12:7-15:11 (Juarez, Court).   The Court also overruled Ornelas-Yanez' second objection.   See Tr. at 53:8-55:19 (Court).   Finally, the Court overruled Ornelas-Yanez' third objection.   See Tr. at 57:12-58:2 (Court).

After overruling Ornelas-Yanez' objections, Ornelas-Yanez argued that there is an ambiguity in the method that the Guidelines use in defining the term "prior conviction."   Tr. at 60:11-15 (Juarez).   Ornelas-Yanez contended that the language of the Guidelines and United States v. Alvarado make the Guidelines provision vague, which "may make constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."   Tr. at 60:16-22 (Juarez).   Because of the vagueness, Ornelas-Yanez asked that the Court sentence him on the low end of the Guidelines range.   See Tr. at 60:24-4 (Juarez).   He also

asked the Court to take into consideration that he tried to cooperate with the United States.   See Tr. at 63:12-16 (Juarez).

The Court noted that Ornelas-Yanez' Guidelines offense level is 33, but that it would vary to reflect the impending Guidelines, which results in a working offense level of 31.   See Tr. at 66:13-19 (Court).   The Court considered the factors in 18 U.S.C. § 3553(a), and concluded that, after granting a variance to reflect the impending Guidelines, it would impose a sentence on the low end of the impending Guidelines range.   See Tr. at 67:2-68:18 (Court).   The Court then imposed a sentence of 121-months imprisonment followed by five years of supervised release. See Tr. at 68:24-69:1 (Court).

## LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, thus making the Guidelines sentencing ranges effectively advisory.   See 543 U.S. at 245.   In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.   Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."   543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United States, 525 U.S. 38 (2007), as recognized in United States v. White, 265 F. App'x 719, 728 n.8 (10th Cir. 2008)(unpublished). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  United States v. Cage,

451 F.3d at 593 (internal quotation marks omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[19] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[19]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures. The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

---

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, No. CR 10-1919-002, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

- 25 -

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).   The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89.   Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.   See United States v. Alemendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).   On the other hand, in United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.

## LAW REGARDING U.S.S.G. § 3B1.1 AGGRAVATING ROLE ENHANCEMENTS

Section 3B1.1 of the Sentencing Guidelines provides for enhancements to a defendant's offense level based on a defendant having played an aggravating role in the offense. Section 3B1.1 of the Sentencing Guidelines provides:

Based on the defendant's role in the offense, increase the offense level as follows:

> **(a)**   If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.
>
> **(b)**   If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

>   **(c)**   If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S.S.G. § 3B1.1.   "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."   U.S.S.G. § 3B1.1 Application Note 1.

Among the factors a sentencing court should consider when weighing an aggravating role enhancement are:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.   There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1 Application Note 4.   The Tenth Circuit has "elaborated that '[i]n considering these factors, the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures.'"   United States v. Sallis, 533 F.3d 1218, 1223 (10th Cir. 2008)(quoting United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995)).   See United States v. Vigil, 998 F. Supp. 2d 1121 (D.N.M. 2014)(Browning, J.)(refusing to find that nurse practitioner, who was illegally distributing controlled substances, was a leader or organizer even though she was essential to the success of the drug trafficking scheme).   "'A defendant's participation in illegal but lower-level activities,' however, 'will not support application of the enhancement.'"   United States v. Vigil, 998 F. Supp. 2d at 1144-45 (quoting United States v. Sallis, 533 F.3d at 1223).   Nevertheless, "[a] defendant may be eligible for the leader or organizer enhancement if he leads or organizes even one other participant."   United States v. Damato, 672 F.3d 832, 847 (10th Cir. 2012).

The Tenth Circuit, in the context of conspiracies to distribute illegal drugs, has also

> identified several factors which might indicate that a defendant exercised the requisite control over others, including that: other sellers worked for him, were recruited by him, or had their activities controlled by him; "he paid others for their efforts on behalf of the conspiracy;" "he restricted the people to whom other coconspirators could sell their drugs;" and "he controlled the manner of sales, set prices, or claimed the right to a larger share of proceeds."  United States v. Anderson, 189 F.3d 1201, 1212 (10th Cir. 1999); see also United States v. Massey, 48 F.3d 1560, 1572 (10th Cir. 1995)(listing similar factors).

United States v. Sallis, 533 F.3d at 1223.  "[A] 'role as a supplier of drugs to others, standing alone, is not enough' to justify a leader enhancement" under § 3B1.1, nor is "supplying drugs on credit, or fronting, without more."  United States v. Sallis, 533 F.3d at 1223-24 (quoting United States v. Anderson, 189 F.3d at 1212)(citing United States v. Owens, 70 F.3d 1118, 1129 (10th Cir. 1995)).

"A two-level adjustment under § 3B1.1(c) applies whenever 'the defendant was an organizer, leader, manager, or supervisor in any criminal activity [involving less than five participants and that is not otherwise extensive].'"  United States v. Wardell, 591 F.3d 1279, 1304 (10th Cir. 2009)(alterations in original)(quoting U.S.S.G. § 3B1.1(c)).  See United States v. Tilga, 824 F. Supp. 2d 1295, 1319 n.12 (D.N.M. 2011)(Browning, J.)("Section 3B1.1(c) applies to leaders, organizers, managers, or supervisors of organizations with less than five persons.  The only relevant difference between an organizer under § 3B1.1(a) and an organizer under § 3B1.1(c), it seems, is the size of the organization.").  "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered."  U.S.S.G. § 3B1.1 Application Note 3.  "The [Sentencing] Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility."  U.S.S.G. § 3B1.1, Background.

While there is overlap between the activities that would make a defendant a leader and those that would make a defendant an organizer, the two are distinct.   "Functioning as a leader requires an element of control over underlings, particularly in the form of recruitment and direction.   To qualify as an organizer, however, no control is necessary."   United States v. Wardell, 591 F.3d at 1304 (citations omitted)(citing United States v. Cruz Camacho, 137 F.3d 1220, 1224-25 (10th Cir. 1998); United States v. Egbert, 562 F.3d 1092, 1103 (10th Cir. 2009)). The Tenth Circuit has recognized that, as a result of the Commission's inclusion of managers or supervisors along with organizers in § 3B1.1(c), "a defendant may be punished as an organizer under § 3B1.1(c) for devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants."   United States v. Valdez-Arieta, 127 F.3d 1267, 1272 (10th Cir. 1997).   Thus, "'[t]he key to determining whether a defendant qualifies as an organizer is not direct control but relative responsibility.'" United States v. Wardell, 591 F.3d at 1304 (quoting United States v. Tejada-Beltran, 50 F.3d 105, 112 (10th Cir. 1995)).

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute."   530 U.S. at 481.   The Supreme Court cautioned, however, that the Constitution limits this discretion and that the Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   Apprendi v. New

Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303 (emphasis omitted)(citations omitted)(internal quotation marks omitted).  In United States v. Booker, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime."  United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of Apprendi's requirement." (ellipsis omitted)(brackets omitted)(internal quotations marks omitted)).  The Supreme Court has recently held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  Alleyne v. United States, 133 S. Ct. at 2155.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement-findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the

defendant and used that amount to increase his sentence under the Guidelines.   See United States v. Magallanez, 408 F.3d at 682.   The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.   See United States v. Magallanez, 408 F.3d at 682-83.   The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.   Although United States v. Booker made the Guidelines "effectively advisory," the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." 408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence out to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."   United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[20]   "[T]he application of an enhancement . . . does not implicate the

---

[20]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).   See United States v. Olsen, 519 F.3d at 1105 (affirming the preponderance of the evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).   The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.   See United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation); United States v.

Supreme Court's holding in Apprendi v. New Jersey."   United States v. Reyes-Vencomo, No. CR

11-2563 JB, 2012 WL 2574810, at *3 (D.N.M. June 26, 2012)(Browning, J.).   The Tenth Circuit

applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact

would increase a defendant's sentence "above the statutory maximum permitted by the statute of

conviction."   United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005).   Accord United States v.

Ray, 704 F.3d at 1314.   A defendant may only assert an error under Apprendi v. New Jersey

where the fact at issue increased his sentence beyond the statutory maximum.   See United States

v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an

error under Apprendi v. New Jersey because "his sentence does not exceed the statutory

maximum"); United States v. Hendrickson, No. 12-5016, 2014 WL 6679446, at *6 (10th Cir. Nov.

25, 2014)(unpublished) [21](holding that, after Alleyne v. United States, "[i]t is well-established that

---

Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance of the evidence standard for facts that enhance a defendant's offense level four-levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (finding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

   [21]United States v. Hendickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds that United States v. Hendrickson, United States v. Garcia, 279 F. App'x 616, 621 (10th Cir.

sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").   As the Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in Alleyne v. United States, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from Apprendi v. New Jersey, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26[ (D.N.M. Aug. 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, No. CR 14-0259 JB, 2014 WL 6065657, at *14 (D.N.M. Nov. 3, 2014)(Browning, J.).

## ANALYSIS

The Court will overrule Ornelas-Yanez' Objections.  While Ornelas-Yanez received a conditional discharge, the discharge was pursuant to a statute that requires a finding of guilt.   The conviction is, thus, a prior conviction under U.S.S.G. § 4A1.1(c), and the Court will overrule Ornelas-Yanez' first objection.  Because Ornelas-Yanez recruited Garcia to deliver the drugs, directed Garcia to deliver the drugs, and set up the transaction, the Court concludes that Ornelas-Yanez is a leader and organizer under U.S.S.G. § 3B1.1(c), and the Court will overrule Ornelas-Yanez' second objection.   Finally, the Court concludes that there is sufficient evidence to find that Ornelas-Yanez engaged in other drug transactions, and the Court will overrule Ornelas-Yanez' third objection.   Because the Sentencing Commission has approved the impending Guidelines, the Court will vary downwards to reflect the impending Guidelines and will sentence Ornelas-Yanez at the low-end of that working range to 121 months imprisonment.

---

2008)(unpublished), United States v. Leroy, 298 F. App'x 711 (10th Cir. 2008)(unpublished), and United States v. McGee, No. 99-2054, 194 F.3d 1321 (10th Cir. Sept. 10, 1999)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

I.     **ORNELAS-YANEZ' JANUARY 15, 2008, CONVICTION IS A PRIOR SENTENCE UNDER U.S.S.G. § 4A1.1(c).**

Ornelas-Yanez' January 15, 2008, conviction is a prior sentence under U.S.S.G. § 4A1.1(c).   The PSR notes that Ornelas-Yanez was convicted for possession of a controlled substance, and for use or possession of a controlled substance.   See PSR ¶ 35, at 7.   The PSR notes that Ornelas-Yanez was granted a conditional discharge without adjudication, but that the court accepted and recorded a guilty plea in the case.   See PSR ¶ 35, at 7.   According to the court documents, which were provided to the Court at the hearing, Ornelas-Yanez received a conditional discharge pursuant to N.M. Stat. Ann. § 31-20-13.   Section 31-20-13 provides:

A.     When a person who has not been previously convicted of a felony offense is found guilty of a crime for which a deferred or suspended sentence is authorized, the court may, without entering an adjudication of guilt, enter a conditional discharge order and place the person on probation on terms and conditions authorized by Sections 31-20-5 and 31-20-6 NMSA 1978.   A conditional discharge order may only be made available once with respect to any person.

B.     If the person violates any of the conditions of probation, the court may enter an adjudication of guilt and proceed as otherwise provided by law.

C.     The court shall not enter a conditional discharge order for a person found guilty of driving a motor vehicle while under the influence of intoxicating liquor or drugs, pursuant to the provisions of Section 66-8-102 NMSA 1978.

N.M. Stat. Ann. § 31-20-13.

The PSR added one criminal history point pursuant to U.S.S.G. § 4A1.1(c), which states that one point should be added "for each prior sentence not counted in" subsections (a) and (b).[22] U.S.S.G. § 4A1.1(c).   A prior sentence is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part

---

[22]Subsection (a) provides that 3 criminal history points should be added "for each prior sentence of imprisonment exceeding one year and one month," and subsection (b) provides that 2 criminal history points should be added "for each prior sentence of imprisonment of at least sixty days not counted in" subsection (a).   U.S.S.G. § 4A1.1(a)-(b).

of the instant offense."   U.S.S.G. § 4A1.2(a)(1).   Concerning deferred adjudications, and other diversionary dispositions, the Guidelines state:

> Diversion from the judicial process without a finding of guilt (<u>e.g.</u>, deferred prosecution) is not counted.   A diversionary disposition resulting from a finding or admission of guilt, or a plea of <u>nolo contendere</u>, in a judicial proceeding is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered, except that diversion from juvenile court is not counted.

U.S.S.G. § 4A1.2(f).   Accordingly, a deferred adjudication process that does not require a finding of guilt is not a prior sentence for § 4A1.1(c) purposes, while a deferred adjudication process that involves a finding of guilt is.   <u>See</u> U.S.S.G. § 4A1.2(f).   The Guidelines' Application Notes provides the reasoning for this distinction.   <u>See</u> U.S.S.G. § 4A1.2 Application Note 9.   "Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court.   This reflects a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency."   U.S.S.G. § 4A1.2 Application Note 9.

The deferred adjudication, under which Ornelas-Yanez was granted a conditional discharge, requires a finding of guilt.   <u>See</u> N.M. Stat. Ann. § 31-20-13(a)("When a person who has not been previously convicted of a felony offense <u>is found guilty of a crime</u> for which a deferred or suspended sentence is authorized, the court may, without entering an adjudication of guilt, enter a conditional discharge order and place the person on probation . . . ."   (emphasis added)).   Additionally, Ornelas-Yanez pled guilty in that case.   <u>See</u> PSR ¶ 35, at 7; Hearing Ex. 1 at 1 (noting that the state court "accepted and recorded a plea of guilty on" January 7, 2008).   Ornelas-Yanez' conditional discharge, thus, resulted from a finding of guilt.   <u>See</u> U.S.S.G. § 4A1.2(f).   Ornelas-Yanez' January 15, 2008, conviction is, therefore, considered to be a prior sentence for § 4A1.1(c) purposes.

This result is consistent with prior Tenth Circuit cases[23] and with cases from other United States Courts of Appeals.   In <u>United States v. Cox</u>, 934 F.2d 1114 (10th Cir. 1991), the defendant pled guilty to a 1984 drug offense in Colorado.   <u>See</u> 934 F.2d at 1124.   The guilty plea resulted in a deferred judgment against the defendant.   <u>See</u> 934 F.2d at 1124.   The defendant was subsequently convicted in federal court for another crime, and the district court assessed the defendant with one criminal history point for the 1984 drug conviction.   <u>See</u> 934 F.2d at 1124. On appeal, the Tenth Circuit noted that, under the Colorado deferred prosecution statute, Colo. Rev. Stat. § 16-7-401 (repealed), a defendant does not enter a guilty plea, but under the Colorado deferred judgment statue, Colo. Rev. Stat. § 16-7-403 (repealed), a defendant is required to enter a plea.   <u>See</u> <u>United States v. Cox</u>, 934 F.2d at 1124.   The Tenth Circuit affirmed the district court's assessment of the criminal history point, because the defendant received a deferred judgment, which required a plea, and because the defendant pled guilty in receiving the deferred judgment. <u>See</u> 934 F.2d at 1124 (citing U.S.S.G. § 4A1.2(f)).   A number of other United States Courts of Appeals have reached similar conclusions.   <u>See, e.g.</u>, <u>United States v. Curet</u>, 670 F.3d 296, 307

---

[23]The Tenth Circuit has affirmed a district court's assessment of 2 criminal history points under U.S.S.G. § 4A1.1(c) for convictions under the New Mexico deferred judgment statute.   <u>See</u> <u>United States v. McGee</u>, No. 99-2054, 194 F.3d 1321, at *2 (10th Cir. Sept. 10, 1999)(unpublished)(Lucero, J., joined by Brorby & Ebel, J. J.).   It is not clear whether the deferred judgment statute from <u>United States v. McGee</u> is the same deferred adjudication statute under which Ornelas-Yanez received his conditional discharge.   Furthermore, the Tenth Circuit refused to decide whether a conviction under the New Mexico statute constituted a prior sentence under U.S.S.G. § 4A1.2(b), because the defendant waived the issue on appeal.   <u>See</u> <u>United States v. McGee</u>, No 99-2054, at *1 n.2.

> [The defendant] does not raise on appeal, as he did at the sentencing hearing, the issue of whether a plea of <u>nolo contendere</u> resulting in a deferred judgement [sic] under New Mexico law is a "prior sentence" within the meaning of U.S.S.G. § 4A1.2(f).   This issue, therefore, is waived.   <u>See</u> <u>State Farm Fire & Casualty Co. v. Mhoon</u>, 31 F.3d 979, 984 n.7 (10th Cir. 1994).   Because the issue is not raise [sic] on appeal, we do not review it.

<u>United States v. McGee</u>, No 99-2054, at *1 n.2.

(1st Cir. 2012)(holding that Massachusetts' diversionary program requires a finding of guilt and, thus, constitutes a prior sentence); United States v. Charlton, 121 F.3d 700, 1997 WL 428588 (4th Cir. June 31, 1997)(unpublished)(holding that a sentence under West Virginia's diversionary sentence statute is a prior sentence, because the statute requires a plea or fining of guilt); United States v. Kerr, No. 94-5916, 68 F.3d 463 (4th Cir. Oct. 6, 1995)(unpublished)(holding that prior conditional discharge under New York statute constituted a prior sentence for U.S.S.G. § 4A1.1(c) purposes); United States v. Cox, No. 96-2417, 114 F.3d 1189 (6th Cir. June 11, 1997)(unpublished)(holding that Michigan's diversionary program requires an admission of guilt); United States v. Giraldo-Lara, 919 F.2d 19 (5th Cir. 1990)(holding that a sentence under Texas deferred adjudication statute can be prior sentence when the defendant pled guilty); United States v. Rockman, 993 F.2d 811 (11th Cir. 1993)(holding that plea of nolo contender in state diversionary program constitutes a prior sentence under U.S.S.G. § 4A1.2(f)).

Ornelas-Yanez relies heavily on Judge Black's opinion in United States v. Alvarado to argue that a deferred adjudication cannot constitute a prior sentence.    See Objections at 1-2. Ornelas-Yanez' reliance is misplaced, because United States v. Alvarado is inapplicable.   In United States v. Alvarado, the defendant pled guilty in New Mexico state court for possession of a controlled substance and for possession of drug paraphernalia.   See 458 F. Supp. 2d at 1267.   The state court granted the defendant a conditional discharge under N.M. Stat. § 31-20-13 -- the same statue under which Ornelas-Yanez received his conditional discharge.   See United States v. Alvarado, 458 F. Supp. 2d at 1267-68.   The defendant was later arrested and charged in state court for felony possession with intent to distribute a controlled substance.   See 458 F. Supp. 2d at 1268.   The defendant pled guilty to that offense and was convicted.   See 458 F. Supp. 2d

at 1268.   The defendant was eventually arrested and charged with a federal drug crime.   <u>See</u> 458 F. Supp. 2d at 1268.

In that case, the United States moved for an enhancement pursuant to 21 U.S.C. § 841(b)(1)(A).[24]   <u>See</u> 458 F. Supp. 2d at 1268.   Section 841(b)(1)(a) states, in relevant part:

> If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence.

21 U.S.C. § 841(b)(1)(A).   Judge Black concluded that the defendants' conviction, which resulted in a conditional discharge, did not constitute a prior conviction for § 841(b)(1)(A) purposes.   <u>See</u> 458 F. Supp. 2d at 1269-70.   Judge Black noted that the New Mexico conditional discharge statute states that a conditional discharge should not be considered to be a prior conviction.   <u>See</u> 458 F. Supp. 2d at 1269.   The statute provides:

> A discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime including the penalties prescribed under this section for second or subsequent convictions or for any other purpose.

N.M. Stat. Ann. § 30-31-28(C).   Judge Black concluded that employing the New Mexico conditional discharge statute in a manner "contrary to its express language would implicate important constitutional principles."   458 F. Supp. 2d at 1269.   He, thus, concluded that a conditional discharge under the New Mexico statute, which states that a conditional discharge cannot constitute as a conviction, would violate the express purpose of the New Mexico statute and the federal statute.   <u>See</u> 458 F. Supp. 2d at 1270 (noting that the purpose of the Omnibus Drug

---

[24]Judge Black states that the United States moved for "an enhancement pursuant to 21 U.S.C. § 841(a)(1)(A)."   458 F. Supp. 2d at 1268.   Judge Black then quotes 21 U.S.C. § 841(b)(1)(A) and discusses § 841(b)(1)(a) throughout the remainder of his opinion.   <u>See</u> 458 F. Supp. 2d at 1268-70.   Moreover, there is no 21 U.S.C. § 841(a)(1)(A).   <u>See</u> 21 U.S.C. § 841(a)(1).   Accordingly, the Court will assume that, in <u>United States v. Alvarado</u>, the United States moved for an enhancement pursuant to 21 U.S.C. § 841(b)(1)(a), and not 21 U.S.C. § 841(a)(1)(A).

Initiative Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181, is to create a partnership between federal, state, and local governments).

In this case, the United States has not asked for an enhancement pursuant to 21 U.S.C. § 841(b)(1)(A).   Judge Black's analysis in United States v. Alvarado is, thus, not applicable. Unlike 21 U.S.C. § 841(b)(1)(A), U.S.S.G. § 4A1.1(c) does not require a prior conviction, but a prior sentence.   Compare 21 U.S.C. § 841(b)(1)(A) ("prior convictions"), with U.S.S.G. § 4A1.1(c) ("prior sentence").   In the same way, while the New Mexico conditional discharge statute states that a conditional discharge "shall not be deemed a conviction," N.M. Stat. Ann. § 30-31-28(C), under U.S.S.G. § 4A1.1(c) and § 4A1.2(f), Ornelas-Yanez' January 15, 2008, conviction is considered a prior sentence rather than a prior conviction.   Because the New Mexico conditional discharge statute requires a finding of guilt, see N.M. Stat. Ann. § 31-20-13(A), and because Ornelas-Yanez pled guilty, see PSR ¶ 35, at 7, the January 15, 2008, conviction is considered a prior sentence under U.S.S.G. §§ 4A1.1(c) and 4A1.2(f).   As the United States Court of Appeals for the Seventh Circuit reasoned:

> While "a disposition of supervision shall be deemed without adjudication of guilt . . . for purposes of disqualification or disabilities imposed by law upon conviction of a crime," 730 ILCS 5/5-6-3.1(f), this does not mean that a judicial proceeding did not occur, or that the defendant's guilt was not established after a guilty plea, stipulation to facts, or plea of nolo contendere.   Indeed, Jones never denies that the dispositions of supervision he received were duly assessed penalties for his offenses.   However the effects of a judicial proceeding might be retroactively transmogrified for purposes of Illinois law, a disposition of supervision is in fact preceded by an "adjudication of guilt."   It is, therefore, countable under the federal sentencing guidelines.   See U.S.S.G. § 4A1.2(a)(1). After all, the Due Process Clause does not let judges go around imposing court-ordered supervision on innocent people.   A disposition of supervision is not to be confused with a deferred prosecution.   In the latter, a defendant avoids an adjudication of guilt because he never reaches that point in the criminal process.
>
> Moreover, when a case is dismissed after supervision, the court does not wave a magic wand to erase the defendant's criminal conduct from the time-space continuum.   Dismissal may give a petty criminal a break for certain purposes

under state law, but it does not compel us to pretend that the wrongdoing for which he was found culpable never occurred.   And it is the fact of that prior wrongdoing, not how the judicial disposition is labeled, which matters in calculating criminal history.   [United States v. Stowe, 989 F.2d 261, 263 (7th Cir. 1993)].   Counting diversionary dispositions that involve admission or judicial determination of guilt reflects "a policy that defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency."   U.S.S.G. § 4A1.2 App. Note 9.

United States v. Jones, 448 F.3d 958, 961 (7th Cir. 2006)(alterations in original).   The Court concludes that the USPO properly added an additional criminal history point for Ornelas-Yanez' January 15, 2008, conviction, and the Court will overrule Ornelas-Yanez' first objection.

## II.   ORNELAS-YANEZ IS A LEADER AND AN ORGANIZER UNDER U.S.S.G. § 3B1.1(c).

Ornelas-Yanez argues that there is insufficient evidence to find that he is an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c).   See Objections 2-3.   He also argues that, under United States v. Booker, Apprendi v. New Jersey, and Alleyne v. United States, the Court must find that he is an organizer, leader, manager, or supervisor under a more substantial standard of proof than a preponderance of the evidence, because the finding would increase his mandatory minimum.   See Objections at 3.   The Court concludes that the correct standard of proof is a preponderance of the evidence, because U.S.S.G. § 3B1.1(c) does not increase Ornelas-Yanez' mandatory minimum, and that there is sufficient evidence to find that Ornelas-Yanez is a leader and an organizer.

### A.   PREPONDERANCE OF THE EVIDENCE IS THE CORRECT STANDARD OF PROOF UNDER U.S.S.G. § 3B1.1(c).

First, the Tenth Circuit has held that the correct standard of proof under § 3B1.1 is to require the United States "to prove by a preponderance of the evidence that the leadership enhancement applies."   United States v. Sallis, 533 F.3d 1218, 1224 (10th Cir. 2008)(citing United States v. Cruz Camacho, 137 F.3d at 1224).   See United States v. Garcia, 279 F. App'x

616, 621 (10th Cir. 2008)(unpublished)("When the government seeks to increase a defendant's sentence under § 3B1.1, as it did here, it bears the burden of proving by a preponderance of the evidence the increase is justified."   (citing <u>United States v. Torres</u>, 53 F.3d 1129, 1142 (10th Cir. 1995))).   The Court will, thus, use a preponderance of the evidence standard.

Ornelas-Yanez' reliance on <u>United States v. Booker</u>, <u>Apprendi v. New Jersey</u>, and <u>Alleyne v. United States</u> is misplaced.   In <u>United States v. Booker</u>, the Supreme Court held that the provisions of the Sentencing Guidelines, which made them mandatory, violated the Sixth Amendment to the Constitution of the United States of America.   <u>See</u> 543 U.S. at 259.   <u>See</u> <u>Gall v. United States</u>, 522 U.S. at 46 ("As a result of our decision [in <u>United States v. Booker</u>], the Guidelines are now advisory[.]").   While the Guidelines are no longer mandatory, the Court must still correctly calculated the applicable Guidelines range and consider the Guidelines in imposing a sentence.   <u>See</u> <u>Gall v. United States</u>, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); 18 U.S.C. § 3553(a)(4) (noting that a district court should consider the Guidelines range in sentencing).   Because of <u>United States v. Booker</u>, the Guidelines no longer bind the Court, but the Court must still consider them.   Not being bound by the Guidelines, however, does not support Ornelas-Yanez' position that the Court should use a more rigorous standard of proof than a preponderance of the evidence in determining whether Ornelas-Yanez is an organizer, manager, leader, or supervisor.

In <u>Apprendi v. New Jersey</u>, the Supreme Court held that a court must submit to the jury any fact that increases the penalty for a crime beyond the prescribed statutory maximum.   <u>See</u> 530 U.S. at 490.   Similarly, in <u>Alleyne v. United States</u>, the Supreme Court held that a court must submit to the jury any fact that increases the mandatory minimum sentence.   <u>See</u> 133 S. Ct. at 2155.   Neither of these cases help Ornelas-Yanez, because application of U.S.S.G. § 3B1.1(c)

does not increase his mandatory minimum or maximum sentence.   Ornelas-Yanez' mandatory

minimum is ten years imprisonment and maximum is life imprisonment.   See 21 U.S.C.

§ 841(b)(1)(A).   21 U.S.C. § 841(b)(1)(A) states that, "if death or serious bodily injury" resulted

from the crime, imprisonment "shall not be less than 20 years or more than life."   21 U.S.C.

§ 841(b)(1)(A).   So, for example, under Alleyne v. United States, the Court could not find by a

preponderance of the evidence that Ornelas-Yanez caused someone's death or caused serious

bodily injury, and then increase the mandatory minimum to twenty years imprisonment.   That

situation is not the case here.   Being an organizer, leader, manager, or supervisor does not affect

Ornelas-Yanez' mandatory maximum or minimum sentence.   It affects only Ornelas-Yanez'

advisory Guidelines sentence range.   Moreover, the Court has previously concluded that neither

Alleyne v. United States nor Apprendi v. New Jersey precludes the Court from finding sentencing

factors by a preponderance of the evidence.

> The Court explained that, although the decision of the Supreme Court of the United
> States in Alleyne v. United States, . . . 133 S. Ct. 2151 . . . (2013), expands the rule
> from Apprendi v. New Jersey, 530 U.S. 466 . . . (2000)(holding that facts that
> increase the maximum sentence a defendant faces must be proven to a jury beyond
> a reasonable doubt), to cover facts that increase the mandatory minimum sentence,
> as well as the maximum sentence, it does not prohibit district judges from
> continuing to find advisory sentencing factors by a preponderance of the evidence.
> See [United States v. Sangiovanni,] 2014 WL 4347131, at *22-26.

United States v. Cervantes-Chavez, 2014 WL 6065657, at *14.   Moreover, the two offense level

enhancement under § 3B1.1(c) is not a sufficiently dramatic increase in sentencing to warrant a

higher burden of proof than preponderance of the evidence.   See United States v. Constantine,

263 F.3d at 1125 n.2 (affirming a preponderance of the evidence standard for facts that enhance a

defendant's offense level four-levels); United States v. Washington, 11 F.3d at 1516 (finding that a

district court need not find by any more than a preponderance of the evidence the amount of

cocaine a defendant distributed, even though its findings increased the defendant's sentence from

- 42 -

twenty years to consecutive forty-year terms).   Accordingly, preponderance of the evidence is the correct standard for determining whether Ornelas-Yanez is an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c).

### B.     ORNELAS-YANEZ IS AN ORGANIZER AND A LEADER.

Ornelas-Yanez is an organizer and a leader.   The Application Notes for U.S.S.G. § 3B1.1 provide a number of factors for a court to consider in determining if a person qualifies for this enhancement.   See U.S.S.G. § 3B1.1 Application Note 4.

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.   This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1 Application Note 4.   The Tenth Circuit has held that "a defendant may be deemed an organizer under § 3B1.1 for 'devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants.'"   United States v. Wardell, 591 F.3d at 1304 (quoting United States v. Valdez-Arieta, 127 F.3d at 1272).   The Tenth Circuit has held that, to qualify as a leader, a person must exercise "an element of control over underlings, particularly in the form of recruitment and direction."   United States v. Wardell, 591 F.3d at 1304 (citing United States v. Cruz Camacho, 137 F.3d at 1224).   Ornelas-Yanez qualifies as both an organizer and a leader.

First, Ornelas-Yanez' and the DEA Agent's testimony from the hearing show that Ornelas-Yanez is an organizer.     According to the DEA Agent, Ornelas-Yanez told the CS to

recruit couriers and transporters who could transport cocaine and marijuana from El Paso, Texas, to Santa Rosa, New Mexico.  See Tr. at 19:23-20:4  (Agent).  The DEA Agent testified that Ornelas-Yanez called the CS on December 9, 2012, to offer the CS one to two pounds of methamphetamine.  See Tr. at 20:22-21:6 (Agent).  The Agent testified that, after Ornelas-Yanez met and questioned the Agent, Ornelas-Yanez instructed the Agent that Ornelas-Yanez would contact the CS to tell the Agent where to meet Garcia to receive the drugs.  See Tr. at 23:9-22 (Wang, Agent).  Ornelas-Yanez' testimony shows that he set up the transaction between the Agent and Ornelas-Yanez.  Ornelas-Yanez testified that he received a shipment of methamphetamine, which he offered to the CS.  See Tr. at 37:8-14 (Juarez, Ornelas-Yanez).  He testified that the drugs were delivered to the Wal-Mart in Portales.  See Tr. at 37:17-19 (Ornelas-Yanez).  Ornelas-Yanez testified that, after meeting the DEA Agent, he called the person who had the drugs and told the person that the drugs needed to be delivered.  See Tr. at 39:7-10 (Juarez, Ornelas-Yanez).  He also testified that he told Garcia to deliver the drugs for him.  See Tr. at 44:15-45:2 (Wang, Ornelas-Yanez).  He further testified that he was to receive $1,500.00 for the pound of methamphetamine, see Tr. at 37:21-22 (Ornelas-Yanez), and that he was going to give $500.00 to Garcia and keep $1,000.00 for himself, see Tr. at 39:15-17 (Ornelas-Yanez).  These facts are sufficient to find by a preponderance of the evidence that Ornelas-Yanez is a leader under U.S.S.G. § 3B1.1(c).

Ornelas-Yanez devised the criminal scheme of selling methamphetamine, and he coordinated and oversaw the carrying out of the scheme.  See United States v. Wardell, 591 F.3d at 1304.  Ornelas-Yanez contacted the CS about selling methamphetamine to the CS.  See Tr. at 20:22-21:6 (Agent); id. at 37:8-14 (Juarez, Ornelas-Yanez).  Ornelas-Yanez coordinated the drugs being delivered from the Wal-Mart in Portales to the Allsups, where the DEA Agent

received them.   See Tr. at 39:7-10 (Juarez, Ornelas-Yanez).   Ornelas-Yanez interrogated the DEA Agent, presumably to determine whether the DEA Agent was law enforcement and to ensure a successful transaction.   See Tr. at 22:18-23:1 (Agent).   After meeting with the Agent, Ornelas-Yanez directed Garcia to deliver the drugs to the Agent.   See Tr. at 44:15-45:2 (Wang, Ornelas-Yanez).   Additionally, Ornelas-Yanez was going to receive twice as much money from the transaction as Garcia.   See Tr. at 39:15-17 (Ornelas-Yanez).   See also U.S.S.G. § 3B1.1 Application Note 4 (noting that a "claimed right to a larger share of the fruits of the crime" is a factor weighing in favor of finding that a person was an organizer).   Accordingly, the Court finds that Ornelas-Yanez was an organizer pursuant to U.S.S.G. § 3B1.1(c), because he devised a criminal scheme, he coordinated the scheme's implementation, and he oversaw the carrying out of the scheme.

Second, Ornelas-Yanez is a leader under U.S.S.G. § 3B1.1(c).   The Tenth Circuit has held that a leader is someone who exercises "an element of control over underlings, particularly in the form of recruitment and direction."   United States v. Wardell, 591 F.3d at 1304.   Ornelas-Yanez both recruited Garcia to engage in a criminal activity and directed him during the execution of that criminal activity.   According to the DEA Agent, while Garcia was Ornelas-Yanez' delivery planner and transporter, see Tr. at 30:22-24 (Agent), Garcia told the Agent that the December 12, 2012, transaction was the first time that he delivered drugs for Ornelas-Yanez, see Tr. at 29:7-30:7 (Juarez, Court, Agent).   According to Ornelas-Yanez, he had never worked with Garcia on a drug deal before this transaction.   See Tr. at 39:18-24 (Juarez, Ornelas-Yanez).   Ornelas-Yanez testified that he told Garcia to deliver the methamphetamine to the DEA Agent.   See Tr. at 44:15-45:2 (Wang, Ornelas-Yanez).   Ornelas-Yanez further testified that Garcia would not have

delivered the drugs if Ornelas-Yanez had not told him to deliver them.   See Tr. at 45:3-5 (Wang, Ornelas-Yanez).

This evidence is sufficient to find by a preponderance of the evidence that Ornelas-Yanez is a leader pursuant to U.S.S.G. § 3B1.1(c).   Garcia had not delivered drugs for Ornelas-Yanez before December 12, 2012,[25] Tr. at 29:7-30:7 (Juarez, Court, Agent); Tr. at 39:18-24 (Juarez, Ornelas-Yanez), and Ornelas-Yanez recruited him to deliver methamphetamine, see Tr. at 44:15-54:2 (Wang, Ornelas-Yanez).   Additionally, during the transaction, Ornelas-Yanez directed Garcia to deliver the drugs to the DEA Agent, see Tr. at 44:15-54:2 (Wang, Ornelas-Yanez), an act that, according to Ornelas-Yanez, Garcia would not have committed but-for Ornelas-Yanez instructing him, see Tr. at 45:3-5 (Wang, Ornelas-Yanez).   Accordingly, by recruiting and directing Garcia, Ornelas-Yanez acted as a leader pursuant to U.S.S.G. § 3B1.1(c).   See United States v. Wardell, 591 F.3d at 1404 ("Functioning as a leader requires an element of control over underlings, particularly in the form of recruitment and direction.").   Moreover, that Ornelas-Yanez led only one individual, Garcia, does not change the Court's analysis.   See United States v. Damato, 679 F.3d at 847 ("A defendant may be eligible for the leader or organizer enhancement if he leads or organizes even one other participant.").   Ornelas-Yanez directs the Court to Application Note 4 of U.S.S.G. § 3B1.1, which states: "'This adjustment does not apply to a defendant who merely suggests committing the offense.'"

---

[25]It is unclear whether Garcia has delivered drugs for anyone else.   Both the Agent's testimony and Ornelas-Yanez' testimony state that Garcia had not delivered drugs for Ornelas-Yanez before December 12, 2012.   See Tr. at 29:7-30:7 (Juarez, Court, Agent); Tr. at 39:18-24 (Juarez, Ornelas-Yanez).   Neither state whether Garcia has delivered drugs for anyone else.   Because there is no evidence that Garcia has delivered drugs in the past, and reasonable inferences can be drawn from both the Agent's and Ornelas-Yanez' testimony that Garcia had not delivered drugs before this incident -- i.e. it would be odd that Garcia told the Agent that he had never delivered drugs for Ornelas-Yanez before this incident, if he had regularly engaged in drug deliveries for others, and it would be odd that Ornelas-Yanez felt compelled to lie to Garcia about the content of the drugs if Garcia had experience in delivering drugs -- the Court concludes that the December 12, 2012, transaction was the first time that Garcia delivered drugs.

Objections at 3 (quoting U.S.S.G. § 3B1.1 Application Note 4).   Here, Ornelas-Yanez did not, however, just suggest committing an offense; he committed an offense, and recruited and directed Garcia in doing so.   Similarly, Ornelas-Yanez' argument that § 3B1.1 requires an ongoing relationship and cannot occur after only one transaction is without a sound basis in § 3B1.1's law or in the case law.   See United States v. Zepeta, 389 F. App'x 907, 910 (11th Cir. 2010)("Zepeta's argument that he does not qualify for an aggravating role enhancement because his offense consisted of a 'one-time drug transaction' is meritless, because § 3B1.1 contains no requirement that the underlying offense occur over an extended period of time."   (citing U.S.S.G. § 3B1.1)). Because the Court finds by a preponderance of the evidence that Ornelas-Yanez acted as an organizer and a leader, the Court will overrule Ornelas-Yanez' second objection.

## III.   THERE IS SUFFICIENT EVIDENCE TO FIND THAT ORNELAS-YANEZ ENGAGED IN MULTIPLE DRUG TRANSACTIONS.

There is sufficient evidence to find that Ornelas-Yanez engaged in multiple drug transactions.   Ornelas-Yanez' third objection states in full: "The third objection of the Defendant relates to the alleged Offense Conduct that seeks to accuse the defendant of multiple transaction [sic] of methamphetamine which the Defendant has consistently denied."   Objections at 4. Ornelas-Yanez did not address this objection at the hearing.   See Tr. at 57:9-11 (Juarez, Court). Ornelas-Yanez' third objection appears to concern ¶ 18 of the PSR.   Paragraph 18 states, in relevant part: "Further, DEA advised **Ornelas** employed other individuals in this conspiracy to deliver narcotics and retrieve narcotics proceeds owed to him.   Information gathered by DEA during their investigation suggests **Ornelas** had been involved in the distribution of pound-quantities of methamphetamine since October 2011."   PSR ¶ 18, at 5 (bold in original). This paragraph does not affect Ornelas-Yanez' sentencing Guidelines calculation; however, the Court concludes that there is sufficient evidence to overrule Ornelas-Yanez' third objection.

At the hearing, the DEA Agent testified that Ornelas-Yanez contacted a CS about a delivery of cocaine and marijuana that Ornelas-Yanez was expecting. See Tr. at 19:18-23 (Agent). The Agent also testified that in November, 2012, Ornelas-Yanez contacted the CS and told the CS to start recruiting couriers and transporters that could transport cocaine and marijuana from El Paso to Santa Rosa. See Tr. at 19:23-20:4 (Agent). Additionally, the Agent testified that Ornelas-Yanez told the CS that he had a delivery of five pounds of methamphetamine, see Tr. at 20:9-13 (Agent), but he offered the CS only one to two pounds of the methamphetamine, see Tr. at 20:22-21:6 (Agent). Ornelas-Yanez testified at the hearing that he provided the United States with information about people with whom he had dealt drugs, see Tr. at 35:23-25 (Juarez, Ornelas-Yanez); id. at 36:15-17 (Juarez, Ornelas-Yanez), and about other activities in which he was involved, see Tr. at 40:21-24 (Juarez, Ornelas-Yanez). Ornelas-Yanez further testified that he indicated to the United States that he "had been involved in drug dealing for a period of time." Tr. at 35:19-22 (Juarez, Ornelas-Yanez).

This evidence is sufficient to find by a preponderance of the evidence that Ornelas-Yanez engaged in multiple drug transactions. Ornelas-Yanez admitted that he had been involved in drug dealing for a period of time. See Tr. at 35:19-22 (Juarez, Ornelas-Yanez). Additionally, the DEA Agent testified that Ornelas-Yanez contacted the CS about recruiting couriers and transporters to deliver drugs. See Tr. at 19:23-20:4 (Agent). Finally, Ornelas-Yanez received a five pound shipment of methamphetamine, yet he gave only one pound to the DEA Agent, see Tr. at 20:9-13 (Agent); id. at 20:22-21:6 (Agent), suggesting that Ornelas-Yanez sold the rest to another buyer. This evidence is sufficient to find by a preponderance of the evidence that Ornelas-Yanez engaged in multiple drug transactions.

Paragraph 18 of the PSR notes that the DEA gathered evidence that suggests that Ornelas-Yanez has been involved in distributing pound-quantities of methamphetamine since October, 2011.   See PSR ¶ 18, at 5.   Based on the evidence presented at the hearing, there is no evidence to suggest when Ornelas-Yanez began dealing drugs, other that Ornelas-Yanez' testimony where he stated that he had been dealing drugs for a period of time.   See Tr. at 35:19-22 (Juarez, Ornelas-Yanez).   Ornelas-Yanez does not specify when this period of time was.   See Tr. at 35:19-22 (Juarez, Ornelas-Yanez).   Ornelas-Yanez' objection appears to go to the suggestion that he engaged in multiple drug transaction and not to the period of time in which he was engaging in drug transactions.   See Objections at 4 ("The third objection of the Defendant relates to the alleged Offense Conduct that seeks to accuse the defendant of multiple transaction [sic] of methamphetamine which the Defendant has consistently denied.").   Because the Court finds by a preponderance of the evidence that Ornelas-Yanez engaged in multiple drug transactions, the Court will overrule Ornelas-Yanez' third objection.

IV.   **THE COURT WILL VARY ORNELAS-YANEZ' SENTENCE DOWNWARD TO MATCH THE SENTENCE HE WOULD RECEIVE UNDER THE IMPENDING GUIDELINES AND WILL SENTENCE HIM TO 121-MONTHS IMPRISONMENT.**

Under the impending Sentencing Guidelines, which the United States Sentencing Commission has passed but Congress has not yet approved, Ornelas-Yanez' base offense level would be 32, rather than 34.   See Addendum at 1.   The Court has previously varied downward to match the sentencing range of the impending Guidelines, see United States v. Cervantez-Chavez, 2014 WL 6065657, at *28, and the Court will do so here.   With a base offense level of 32, a 2 level enhancement for being a leader and organizer under U.S.S.G. § 3B1.1(c), a 2 level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and a 1 level reduction for timely notifying the United States of his intention to plead guilty under U.S.S.G. § 3E1.1(b),

Ornelas-Yanez' resulting offense level is 31.   An offense level of 31 and a criminal history category of II results in a Guidelines imprisonment range of 121-151 months.   After considering the factors set forth in 18 U.S.C. § 3553(a), the Court concludes that a sentence at the low end of this Guidelines range is warranted.   The Court will thus sentence Ornelas-Yanez to 121-months imprisonment.

**IT IS ORDERED** that Defendant's Exception to Pre-Sentence Report filed on October 7, 2014 (Doc. 96), is overruled.   The Court sentences Defendant Jesus Jose Ornelas-Yanez to 121-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
    United States Attorney
Linda Mott
Lynn Wei-Yu Wang
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Santiago E. Juarez
Albuquerque, New Mexico

    *Attorney for the Defendant*